IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIDGET RENNA OSBORNE,

                Plaintiff,

v.                                              OPINION and ORDER

ANDREW M. SAUL,                             20-cv-212-jdp
Commissioner of Social Security,

                Defendant.

---

Bridget Renna Osborne seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Osborne not disabled within the meaning of the Social Security Act. Osborne contends that administrative law judge Janet Akers (ALJ) erred by: (1) failing to adequately consider Osborne's subjective complaints; (2) giving flawed reasons for rejecting the opinion of a nurse practitioner; and (3) failing to support a finding that Osborne could frequently perform handling and fingering.

The court is not persuaded that the ALJ erred and will affirm the commissioner's decision.

ANALYSIS

Osborne sought benefits based on both physical and mental impairments, alleging disability beginning in 2014. R. 18.[1] In a January 2019 decision, the ALJ found that Osborne suffered from several severe impairments, including lupus, fibromyalgia, and Raynaud's disease.

---

[1] Record cites are to the administrative transcript, located at Dkt. 11.

R. 19.[2] The ALJ ascribed to Osborn the residual functional capacity (RFC) to perform sedentary work with additional restrictions, including that Osborne must be allowed to change positions every 30 minutes for one to two minutes. R. 21. Based on the testimony of a vocational expert (VE), the ALJ found that Osborne could not perform her past work, but she was not disabled because she could work in jobs available in the national economy, including account clerk, document preparer, and assembler.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, meaning that the court looks to the administrative record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## A. Subjective complaints

The court must uphold an ALJ's credibility determination unless it is "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). In this case, Osborne devotes four pages of her opening brief to summarizing subjective complaints that she alleged in her function reports and at the administrative hearing, Dkt. 18, at 13–16, and she broadly contends that her complaints "should have been given weight," *id.* at 17. But the way Osborne frames the issue is flawed for two reasons.

---

[2] The ALJ also found that Osborne suffers from severe mental impairments, but Osborne doesn't challenge the ALJ's handling of her mental impairments, so the court need not consider those.

First, the ALJ didn't simply discount Osborne's subjective complaints. Rather, the ALJ found that Osborne's impairments could reasonably be expected to produce her symptoms, but that Osborne's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." R. 22.

Second, and more important, Osborne doesn't explain how the RFC fails to account for most of her subjective complaints. For example, she cites several instances in the record in which she complains about pain, and she contends that the ALJ was "playing doctor" when she found that Osborne's pain improved with treatment. But missing from Osborne's argument is any explanation of why she believes that the level of pain she experiences is disabling or imposes limitations beyond those found by the ALJ. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various conditions of hers but their severity."). Without that explanation, it simply doesn't matter how much Osborne's pain did or didn't improve when she complied with treatment. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (claimant bears burden of showing impairments that affected ability to work).[3]

Osborne does develop an argument about her fatigue, citing her testimony from the administrative hearing. When questioned by her attorney about fatigue, Osborne said that she feels like she has "flu all the time." R. 50. After Osborne said that she recently had a "flare up" of fatigue that kept her in bed for three days, counsel asked Osborne how often she got "those flare-ups where it kind of puts you down for a little bit of time." *Id.* Osborne said that it

---

[3] Osborne includes a sentence in her brief observing that the ALJ rejected "other subjective findings," including memory loss, skin lesions, fever, and vomiting. Dkt. 18, at 23–24. But Osborne doesn't explain why she believes that the ALJ erred in her handling of these symptoms, so Osborne has forfeited any contention that the symptoms show that she is disabled.

"depends on the amount of stress that's going on in my life." *Id.* She then said that she gets flare ups "at least three days out of the week" and "maybe ha[s] one productive day out of the week." R. 51.

Osborne's testimony could have been clearer. Her answers could be interpreted to mean that her fatigue is situational, that she is only able to work four days a week, or that she is only able to work one day a week. But the court will assume that her testimony, if accepted, would render her disabled.

The ALJ considered Osborne's testimony about fatigue and declined to credit it on the ground that it was inconsistent with her daily activities:

> At the hearing, the claimant alleged that she has flares weekly lasting three days. She stated some days she struggles to get out of bed. However, she engages in activities inconsistent with her allegations of disability. The record shows that she became engaged, planned her wedding, listed her house, performed or oversaw repairs on it, then meeting new people and dating them. She went camping. She takes care of multiple children. She was swimming and walking for exercise in April 2018. While these activities are not work activity, they suggest she is more capable than alleged.

R. 26.

Osborne contends that her activities "offer little evidence that [she] could sustain competitive employment." Dkt. 18, at 21. But the ALJ didn't say otherwise. The ALJ acknowledged that the activities "are not work activity" but observed that they are nonetheless evidence that Osborne is "more capable than alleged." That is a permissible use of evidence about a claimant's activities of daily living. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (ALJ may consider a claimant's daily activities "in assessing whether his testimony about the effects of his impairments was credible or exaggerated").

Osborne doesn't deny that her activities are inconsistent with her allegations. Instead, she contends that it was the ALJ's obligation to inquire further at the administrative hearing to determine the extent of her activities, citing *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). But *Stage* doesn't help her. In that case, the court concluded that an ALJ may not assume that a claimant failed to seek treatment because she didn't need it. But the court of appeals has rejected the contention that an ALJ has a general duty to resolve any ambiguities in the record. *See McHenry v. Berryhill*, 911 F.3d 866, 873–74 (7th Cir. 2018) ("[A]n ALJ has the burden of inquiry *only* when drawing inferences about the severity of a condition from the failure to seek or continue medical care." (emphasis added)). In *McHenry*, the court specifically declined to require the ALJ to inquire about the extent of the claimant's physical activities. *Id.* Like the plaintiff in *McHenry*, Osborne doesn't cite evidence showing that her activities were minimal and therefore consistent with her subjective complaints.

It was reasonable for the ALJ to infer that Osborne would not have an active social calendar if she felt like she had flu "all the time" and only had one "productive" day a week. That's enough to uphold the ALJ's credibility determination under the "substantial evidence" standard, even if reasonable minds could disagree with the ALJ. *See Barrett v. Saul*, 822 F. App'x 493, 497 (7th Cir. 2020).

Even if the ALJ placed too much emphasis on Osborne's activities, that wouldn't be a ground for a remand in this case. The ALJ gave great weight to the opinions of the state agency consultants, noting that both of them considered Osborne's fatigue but still found that she could perform a range of sedentary work. R. 29. So that is an alternative basis for discounting Osborne's complaints of fatigue. *See Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (rejecting some of the ALJ's reasons for discounting the claimant's subjective complaints but

5

upholding credibility determination because the ALJ "provide[d] some evidence supporting her determination").

Osborne doesn't challenge the consultants' opinions. Instead, she says only that the consultants issued their decisions in 2016 and didn't consider evidence from 2017 and 2018. But Osborne doesn't allege that her conditioned worsened after 2016, so the ALJ was entitled to rely on the agency opinions despite their age. *See Moreno v. Berryhill,* 882 F.3d 722, 728 (7th Cir. 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."). The ALJ's credibility determination wasn't patently wrong, so Osborne isn't entitled to a remand on this ground.

**B. Nurse practitioner opinion**

In June 2015, Osborne's nurse practitioner, Julie Smith, wrote the following:

> I recommended being off work for an additional 3 months. In 1 month she will see her rheumatologist. I am hopeful they will make a medication change at that time, and then she would have 2 months for adjustment on that new prescription if all goes as planned. At this point, she is unable to work. She simply does not have the ability to.

R. 526. The ALJ gave "little weight" to Smith's opinion for multiple reasons, but the court need only consider one of them, which is that, on its face, the opinion was for a three-month restriction. Smith did not purport to be giving an opinion on Osborne's long-term prospects, so the ALJ was entitled to discount it. Osborne says that Smith gave her opinion as part of an application for long-term disability benefits, so the ALJ should have interpreted the opinion accordingly. But the opinion says what it says. If Smith had wanted to give an opinion on Osborne's permanent restrictions, she could have said so.

Even if the ALJ should have interpreted Smith's opinion as Osborne suggests, any error was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[A]dministrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."). The ALJ need not defer to a medical provider's conclusory opinion about a claimant's ability to work, which is all Smith's opinion was. *See Loveless*, 810 F.3d at 507. Osborne says that Smith's opinion was more than that, citing the following statement from Smith:

> Bridget states that some days it is hard to get out of bed. She really struggles with her chronic pain issues, her immense overwhelming fatigue, and her secondary depression. She is also anxious, nervous a lot. She has currently been struggling with rashes again. This is related to her lupus. She tries to stay out of the sun. She really cannot tolerate hardly any sunlight right now. The rashes, she said, itch so bad that itching does not seem to do anything and her skin sometimes will peel. They are extremely irritating to her. She has been off work, as I said, since May because of her symptoms.

R. 525. But the above statement isn't an opinion because it doesn't include any findings. It's simply a recitation of what Osborne told her. And even if Smith credited Osborne's statements, it is well established that the ALJ does not have to give any weight to opinions that are based solely on a patient's self-reporting. *See Apke v. Saul*, 817 F. App'x 252, 256–57 (7th Cir. 2020). Under these circumstances, the court is convinced that the ALJ would not credit Smith's opinion over the more recent opinions of the state agency consultants, who considered more medical evidence than Smith. *See Primm v. Saul*, 789 F. App'x 539, 545 (7th Cir. 2019) (ALJ's failure to discuss opinion was harmless when it contained "only conclusory findings").

## C. Handling and fingering

The ALJ found that Osborne could "frequently handle and finger bilaterally." R. 21. Osborne says that the ALJ's finding "had no foundation" because the state agency consultants

7

found *no* limitations on fingering or handling, and the ALJ did not rely on any other expert's opinion. Dkt. 18, at 28.

It is not clear what point Osborne is making. If Osborne means to contend that the ALJ found that Osborne was *more* limited than what the evidence supports, that error would be harmless. If the ALJ had followed the opinions of the consultants, she would have imposed no handling or fingering restriction, which would not support Osborne's claim of disability.

On the other hand, if Osborne means to contend that the ALJ should have found that her handling and fingering limitations were more severe, that contention fails because she doesn't "identify medical evidence that would justify further restrictions." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). Osborne cites several instances in which she noted pain, numbness, or tingling in her hands, Dkt. 18, at 28–29, but she doesn't explain how any of those statements would support greater restrictions than what the ALJ found. So Osborne hasn't provided a basis for reversing the ALJ's decision on this ground.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED and the November 19, 2020 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered November 2, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge